**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **MIDTOWN PERSONNEL, INC.,** | * | |
| **Plaintiff,** | * | |
| **v.** | | **Case No.: PWG-13-3493** |
| | * | |
| **BHUMIKA K. DAVÉ,** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Midtown Personnel, Inc. ("Midtown") filed suit against Defendant Bhumika K. Davé in the Circuit Court for Montgomery County, Maryland on October 11, 2013, at which time Ms. Davé resided in Rockville, Maryland.  Midtown attempted service of process on Ms. Davé; by its second attempt, Ms. Davé had terminated her lease and moved back to Virginia. She removed the case to this Court and now moves to dismiss for lack of personal jurisdiction, among other bases.[1]  Because Midtown has not met its burden of making a prima facie showing of jurisdiction in this Court, and because this action should have been brought in the District of Columbia, I will transfer this case to the United States District Court for the District of Columbia.

---

[1] Defendant's Motion to Dismiss or, in the Alternative, to Stay, ECF No. 12, has been briefed fully.  ECF Nos. 12-1, 31, 31-1, 32.  Although Ms. Davé identifies alternative grounds for dismissal, I need not address those grounds because Plaintiff has not shown that this Court has personal jurisdiction, and I will transfer this case to the United States District Court for the District of Columbia.  A hearing is unnecessary. *See* Loc. R. 105.6.

## I.   BACKGROUND[2]

After Ms. Davé graduated from college, she began working for a company in Bethesda, Maryland, and she moved from her home in Chester, Virginia, to an apartment in Rockville, Maryland, which she "rented . . . in order to shorten the commute." Davé Decl. ¶ 4, ECF No. 32-1.  She worked for that company "for a brief period," Def.'s Reply 5, and then accepted employment with Midtown.  Davé Decl. ¶ 4.  She signed a Noncompetition Agreement ("Noncompetition Agreement") with Midtown that proscribed her from working for any business that engaged in the same business Midtown engaged in for a period of one year after concluding her employment at Midtown.  Noncomp. Agr. 1, Compl. Ex. 1, ECF No. 10-2.[3]  Ms. Davé ended her employment with Midtown on August 5, 2013, and approximately one month later accepted a position at Celerity Government Solutions ("Celerity"), a company that Midtown alleges is "in direct competition" with it.  Compl. ¶¶ 12&13.  Prior to ending her employment at Midtown, Ms. Davé emailed two lists,  "Gov Buzz" and "Gov List" (the "Lists"), that contain contract and billing information of Midtown clients, from her office email to her personal email.  *Id.* ¶¶ 14 & 15.

According to Ms. Davé, Midtown informed Celerity that it would "initiate legal action if Celerity in fact hired Plaintiff," and Celerity rescinded its employment offer.  Davé D.C. Ct. Compl. ¶¶ 13 & 16, ECF No. 12-11.  Thereafter, Ms. Davé filed suit against Midtown in the Superior Court of the District of Columbia, claiming tortious interference with prospective

---

[2]"When a district court rules on personal jurisdiction without holding an evidentiary hearing," relying instead on the filings, as I will do here, the Court "view[s] the facts in the light most favorable to the plaintiff." *See Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).

[3] Plaintiff's Verified Complaint for Damages and a Declaratory Judgment, filed as part of Exhibit 2 to Defendant's Local Rule 103.5 Certification of Filing of State Court Documents, begins at page 65 of ECF No. 10-2.

business advantage and seeking a declaratory judgment and unpaid wages.  *Id.* at 1.  Midtown

removed that case to the United States District Court for the District of Columbia and, in doing

so, stated that Ms. Davé "is a citizen of the Commonwealth of Virginia."  Midtown Notice of

Removal of D.C. Action ¶ 12, Def.'s Mem. Ex. 15, ECF No. 12-16.

Thereafter, on October 11, 2013, Midtown filed this suit against Ms. Davé in the Circuit

Court for Montgomery County, Maryland.  Midtown seeks injunctive relief and $25 million in

damages, claiming that Ms. Davé misappropriated confidential information and trade secrets,

solicited Midtown's customers in breach of the Noncompetition Agreement, converted

Midtown's property, and conspired with Celerity.  Compl. ¶¶ 25, 32, 40, 47, 54, 62.    At that

time, Ms. Davé still was "a resident of Montgomery County, Maryland, and reside[d] at 5230

Tuckerman Lane, Rockville, Maryland 20852."  *Id.* ¶ 2.  Midtown attempted service of process

twice at that address, on October 22, 2013, and November 1, 2013, without success.  Pl.'s Opp'n

14–15.  Plaintiff notes that Ms. Davé still resided at that address as of October 24, 2013, when

she filed an EEO complaint and listed her Rockville address.  *Id.* at 15; *see id.* Ex. J, ECF No.

31-12.  But, Ms. Davé's lease terminated on October 31, 2013, and she moved back to Virginia.

Def.'s Reply 5.

Before Midtown could effect service of process, Ms. Davé removed the case to this Court

on November 21, 2013, ECF No. 1, and now she urges this Court to dismiss the present case for

lack of personal jurisdiction.  Def.'s Mem. 7.  She asserts that, although she "resided in

Montgomery County, Maryland at the time the Complaint was filed," she was not served with

process in Maryland; she is not domiciled in Maryland, as "it is undisputed that Ms. Davé is a

citizen of the Commonwealth of Virginia," such that Maryland's long-arm statute does not

confer jurisdiction over her.  *Id.* at 6, 8.    Ms. Davé insists that she did not intend to change her

domicile from Virginia to Maryland,  even though she lived in Maryland during her period of employment with Midtown.  Def.'s Reply 5.  In her view, the fact that "she did not renew her lease at the apartment [in Maryland] when it ended at the end of October 2013" should "remov[e] any doubt of her intent" to leave Maryland.  *Id*.

Midtown counters that "[t]his Court can exercise personal jurisdiction over Defendant because, based on her own assertion, she was a Maryland resident at the time suit was filed in the Circuit Court for Montgomery County."  Pl.'s Opp'n 14.  Additionally, Midtown argues that when Ms. Davé filed suit against Midtown on October 4, 2013, one week before Midtown filed this lawsuit, Ms. Davé listed her address "as 5230 Tuckerman Lane, Rockville, Maryland 20852."  *Id*.  In Midtown's view, "it is presumed [Defendant] is a Maryland resident" because she "has failed to prove her residence" or address in Virginia.  *Id*.  The only case law Midtown cites to support its position is *Oglesby v. Williams*, 812 A.2d 1061 (Md. 2002), in which the Maryland Court of Appeals stated that, "[o]nce a domicile is determined or established, a person retains his domicile at such place unless the evidence affirmatively shows an abandonment of that domicile."  Pl.'s Opp'n 15 (quoting *Oglesby*, 812 A.2d at 1068 (citations and quotation marks omitted)).  Plaintiff also argues, without citation to authority, that "Defendant's alleged relocation from Maryland while actively avoiding service should not deprive this Court of jurisdiction."  *Id*. at 17.  Alternatively, Midtown argues that this Court has jurisdiction over Ms. Davé through Maryland's long-arm statute because she "sent the Lists and the information therein to her personal email address at a time when she was residing in Maryland, such that "Defendant's misappropriation of said lists was complete – in Maryland."  *Id*. at 18.

Ms. Davé submitted a Declaration with her Reply, stating that her "permanent home is in Chester, Virginia," and that she attended elementary and high school, as well as college, in

Virginia.  Decl. ¶¶ 2–3.  She declared that she "rented an apartment in Rockville in order to shorten the commute" to her first job after college, which was in Bethesda, Maryland.  *Id.* ¶ 4. Ms. Davé added that she remained at that address when she began working at Midtown, her second job, because "the commute between [her] apartment in Rockville, Maryland and Midtown's office remained short."  *Id.* She "decided it was the appropriate time to return to Virginia" in August, when she resigned from Midtown and "received an employment offer with Celerity, a firm located in McLean, Virginia."  *Id.* ¶ 5.  According to Ms. Davé, she "had no intent to remain in Maryland, and no reason to remain in Maryland" after resigning from Midtown.  *Id.* ¶ 6.  From August to October, 2013, Ms. Davé "spent a significant amount of time in [her] permanent home in Chester, Virginia," and then on October 31, 2013, "[t]he lease for the apartment in Rockville ended."  *Id.*  She declared that "[a]t all relevant times, [she has] had a Virginia driver's license" and "a Virginia cell phone"; her "car was, and is, registered in Virginia"; and her "physician is, and has always been, located in Virginia."  *Id.* ¶¶ 7–9.

## II.    LEGAL STANDARD

When a defendant challenges this Court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the jurisdictional question "'is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'" *Fyfe Co., LLC v. Structural Grp., LLC*, No. CCB-13-176, 2013 WL 2370497, at *2 (D. Md. May 30, 2012) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).  If the Court considers the complaint, the parties' briefings, and accompanying affidavits but does not conduct an evidentiary hearing, then "'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting

*Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *see Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)).  This is the approach I will take.  I "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'"  *Fyfe Co.*, 2013 WL 2370497, at *2 (quoting *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (citation and quotation marks omitted)).  Yet, I "need not 'credit conclusory allegations or draw farfetched inferences.'"  *Tharp v. Colao*, No. WDQ-11-3202, 2012 WL 1999484, at *1 (D. Md. June 1, 2012) (quoting *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)).

This Court "may exercise personal jurisdiction as to any cause of action over a person domiciled in, served with process in, organized under the laws of, or who maintains his principal place of business in the State."  Md. Code Ann., Cts. & Jud. Proc. § 6-102(a).  Additionally, under Maryland's long-arm statute, Cts. & Jud. Proc. § 6-103, this Court may exercise specific jurisdiction over an individual defendant who is neither domiciled in nor served with process in Maryland if the "cause of action aris[es] from any act enumerated in [§ 6-103]."  Cts. & Jud. Proc. § 6-103(a); *see Tawney v. AC & R Insulation Co.*, No. WDQ-13-1194, at *2 (D. Md. Oct. 30, 2013); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699 (D. Md. 2012).  Among other acts, § 6-103 provides for the exercise of personal jurisdiction over an individual who "[c]auses tortious injury in the State by an act or omission in the State."  Cts. & Jud. Proc. § 6-103(b)(3).

## III.   DISCUSSION

### A.  Personal Jurisdiction Under § 6-102

The crux of Midtown's argument is that this Court has jurisdiction over Ms. Davé pursuant to Cts. & Jud. Proc. § 6-102 because "she was a Maryland resident" at the time Midtown filed suit.[4]  Pl.'s Opp'n 14.  Yet, significantly, Cts. & Jud. Proc. § 6-102 requires not only residence, but "domicile[]."  Domicile is

> "'the place with which an individual has a settled connection for legal purposes and the place where a person has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning. The controlling factor in determining a person's domicile is his intent. One's domicile, generally, is that place where he intends to be.'"

*Oglesby v. Williams*, 812 A.2d 1061, 1068 (Md. 2002) (quoting *Roberts v. Lakin*, 665 A.2d 1024, 1027 (Md. 1995) (quoting *Dorf v. Skolnik*, 371 A.2d 1094, 1102 (Md. 1977)))).  Thus, "[f]or adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."  *Mississippi v. Holyfield*, 490 U.S. 30, 48 (1989).

> "'The determination of his intent, however, is not dependent upon what he says at a particular time, since his intent may be more satisfactorily shown by what is done than by what is said. . . . Where a person lives and votes at the same place such place probably will be determined to constitute his domicile. Where these factors are not so clear, however, or where there are special circumstances explaining a particular place of abode or place of voting, the Court will look to and weigh a number of other factors in deciding a person's domicile.'"

---

[4] It is undisputed that Ms. Davé was not served in Maryland.  *See* Pl.'s Opp'n 3; Def.'s Reply 6. Although Plaintiff contends that Defendant "would have been served while she was a Maryland resident had it not been for her avoidance of service of process and removal of the case to this Court," Pl.'s Opp'n 14, jurisdiction does not arise from what "would have been," but rather arises when a Defendant is served.  "Even with evasion of service, the requirement for personal service is not dispensed with, rather the rules governing service are merely relaxed somewhat." *Lohman v. Lohman*, 626 A.2d 384, 394 n.9 (Md. 1993).

*Oglesby*, 812 A.2d at 1068–69 (quoting *Roberts*, 665 A.2d at 1027 (quoting *Dorf*, 371 A.2d at 1102–03)).  Some of the other facts the Court considers are

> "the paying of taxes and statements on tax returns; the ownership of property; where the person's children attend school; the address at which one receives mail; statements as to residency contained in contracts or other documents; statements on licenses or governmental documents; where furniture and other personal belongings are kept; which jurisdiction's banks are utilized; membership in professional, fraternal, religious or social organizations; where one's regular physicians and dentists are located; where one maintains charge accounts; and any other facts revealing contact with one or the other jurisdiction."

*Dorf*, 371 A.2d at 1103 (quoting *Bainum v. Kalen*, 325 A.2d 392, 397 (1974)).

As Midtown notes, "[o]nce a domicile is determined or established a person retains his domicile at such place unless the evidence affirmatively shows an abandonment of that domicile."  *Oglesby*, 812 A.2d at 1068 (quoting *Roberts*, 665 A.2d at 1027 (quoting *Dorf*, 371 A.2d at 1102)); *see Comptroller of Treas. v. Lenderking*, 303 A.2d 402, 405 (Md. 1973) ("[A] domicile, once established, continues until it is superseded by a new domicile.").  Midtown applies *Oglesby* to this case to conclude that Ms. Davé must be domiciled in Maryland because, according to Midtown, she has not proven that she left Maryland.  But, Midtown presupposes that it has shown that Ms. Davé was domiciled in Maryland in the first place.

To the contrary, all Midtown has shown is that, for a period of time, Ms. Davé resided in Maryland and used a Maryland mailing address.  Although a "relatively low burden" is required "'to make a prima facie showing of sufficient jurisdictional basis,'" *see Provident v. May*, No. GLR-11-2458, 2012 WL 3595140, at *2 (D. Md. Aug. 17, 2012), Midtown's showing is not sufficient.  As noted, domicile requires both physical presence and an intent to remain.  *See Holyfield*, 490 U.S. at 48.  Midtown has not demonstrated that Ms. Davé intended to remain.  Rather, Midtown has admitted that Ms. Davé is a citizen of Virginia, *see* Midtown Notice of Removal of D.C. Action ¶ 12 (stating that Ms. Davé "is a citizen of the Commonwealth of

Virginia"), and a person only may be a citizen of the state in which he or she is domiciled. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); *Blake v. Arana*, No. WDQ-13-2551, 2014 WL 2002446, at *3 (D. Md. May 14, 2014). Also, "[a]lthough a person may have several places of abode or dwelling, he or she can only have one domicile at a time." *Blount v. Boston*, 718 A.2d 1111, 1115 (Md. 1998) (citations and quotation marks omitted). Thus, in effect, Midtown has stated that Ms. Davé is domiciled in Virginia.

Moreover, through her Declaration, Ms. Davé establishes that she maintained a Virginia driver's license and registration and kept her Virginia physician and phone number while residing in Maryland. She states that her "permanent home" is in Virginia and that she only lived in Maryland for convenience in commuting to work. Notably, "[n]umerous [Maryland] cases have held that persons were domiciled in particular jurisdictions even though they did not actually live in those jurisdictions during the relevant time periods." *Blount*, 718 A.2d at 1116. Although the seven cases that the *Blount* Court cited are not on point,[5] and neither the parties' briefs nor my independent research has identified a Maryland case that is factually similar to the

---

[5] Three cases involved "members of the military" who were "moved about under military orders," such that there was no evidence that they intended to leave the domicile they had before they were ordered to move. *See Wamsley v. Wamsley*, 635 A.2d 1322, 1322, 1326-27 (Md. 1994); *see also Hawks v. Gottschall*, 215 A.2d 745, 746–48 (Md. 1966); *Walsh, Administrator v. Crouse*, 194 A.2d 107, 108 (Md. 1963). *Comptroller v. Lenderking*, 303 A.2d 402, 403, 405–06 (Md. 1973), involved a resident who registered to vote in Maryland, which "should ordinarily have considerable weight, because it is very strong evidence of intention," and consequently the court concluded that he was domiciled in Maryland, despite his declaration to the contrary. In *Maddy v. Jones*, 186 A.2d 482, 486 (Md. 1962), the court concluded that a Maryland resident, who repeatedly returned to West Virginia after brief stints of employment in Maryland and elsewhere, was domiciled in West Virginia. Likewise, in *Hall v. Morris*, 132 A.2d 113, 117–19 (Md. 1957), the court concluded that an individual who only resided in Maryland during periods of summer employment was not domiciled in Maryland. In *Walker v. Walker*, 94 A. 346, 348–49 (Md. 1915), the court concluded that an individual who did not resign from his job in Maryland or secure a permanent position or address outside of Maryland when he left the state for less than a year still was domiciled in Maryland.

case before me, *Stacey v. ZF Lemforder*, No. 05-CV-72777-DT, 2007 WL 439045 (E.D. Mich. 2007), is informative.

In *Stacey*, the plaintiffs brought suit in the United States District Court for the Eastern District of Michigan against their former employer for breach of their employment contracts. *Id.* at *1. They "assert[ed] subject matter jurisdiction through diversity of citizenship," alleging that "at the time the complaint was filed, Plaintiff Stacey was a citizen of Florida and Plaintiff Allen was a citizen of Maine," while Defendant was "a Delaware corporation with its principal place of business in the state of Michigan." *Id.* Defendant moved to dismiss for lack of subject matter jurisdiction, agreeing that it was a citizen of Michigan and contending that Stacey also was a citizen of Michigan when the plaintiffs filed their complaint, such that there was no diversity of citizenship. *Id.* at *1–2.

The court noted that, to invoke diversity jurisdiction, plaintiffs had to "prove domicile by a preponderance of the evidence," *id.* at *2, a higher burden than the prima facie showing required of Plaintiff in this case, *see In re Celotex Corp.*, 124 F.3d at 628. The court also observed that, as with personal jurisdiction, the question for diversity jurisdiction is not of the party's residence, but rather his or her domicile, which requires physical presence and an intent to remain. *See Stacey*, 2007 WL 439045, at *2.

The defendant had moved to dismiss on the same basis prior to discovery, and the court had denied the defendant's motion, concluding that "the preponderance of the evidence established [Stacey's] intent to live in Florida indefinitely." *Id.* at *4. The court reasoned:

> "Defendant's evidence falls short of convincing the court that Stacey's domicile is in Michigan. First, Stacey's action to purchase a house in Michigan does not automatically prove his domiciliary intent was in Michigan. In fact, when Defendant terminated Stacey's job on June 27, 2005, Stacey listed his Michigan house for sale one day later on June 28, 2005.... This tends to show that

Stacey's purpose of purchasing a house in Michigan was for the convenience of his employment at Defendant's Michigan office. Defendant's argument that Stacey's Florida residence is a vacation home is speculative. Defendant provided no conclusive evidence to this court to support its argument. On the contrary, given Plaintiff's supporting evidence, if not for employment at Defendant's Michigan office, Stacey would likely be in Florida.

"Second, most of Stacey's activities in Michigan are activities related to his employment with Defendant. Stacey's acceptance of employment in Michigan and his job related activities in Michigan alone are not sufficient to prove that Stacey manifests an intent to change his domicile to Michigan. No evidence has been presented to show that Stacey obtained Michigan driver's license, registered his vehicles or obtained Michigan automobile insurance. Stacey did not register to vote in Michigan and did not claim tax exemptions in Michigan. In sum, most of the evidence presented reflecting Stacey's Michigan connection is employment related. These employment related events do not convince the court that Stacey intended to remain in Michigan indefinitely or without any intention to go elsewhere."

*Id.* at *3 (quoting earlier order (citations omitted)).

The court concluded that, despite the defendant's belief that, "following discovery, it ha[d] additional evidence which establishe[d] that Plaintiff's domicile at the time the complaint was filed was indeed Michigan," the additional evidence "only bolster[ed] [defendant's] argument that Stacey maintained a residence, perhaps even his primary residence in Michigan." *Id.* at *4. By "focus[ing] more on the concept of residency, or physical permanency," the defendant failed to "persuade the court to change its mind that Stacey had no intention of remaining in Michigan indefinitely." *Id.* The court concluded that there was diversity of citizenship, and it denied the defendant's motion once again. *Id.*

Here, also, Midtown focuses on Ms. Davé's residency rather than her domicile, so much so that Plaintiff fails to make a prima facie showing of domicile. Midtown establishes that Ms. Davé leased an apartment in and resided in Maryland but, as in *Stacey*, that is not enough. Ms. Davé shows that she lived in Maryland for job-related convenience, while maintaining various ties to Virginia, including her driver's license and registration and her physician. Moreover,

when her lease ended, after her employment at Midtown ended, Ms. Davé returned to Virginia instead of renewing her Maryland lease.  Without rebutting this showing, Midtown fails to make a prima facie showing of intent to remain in Maryland, the other half to domicile.  *See Stacey*, 2007 WL 439045, at *2.  Thus, Plaintiff has failed to establish that this Court has personal jurisdiction under Cts. & Jud. Proc. § 6-102.  *See In re Celotex Corp.*, 124 F.3d at 628; Cts. & Jud. Proc. § 6-102(a).

### B.  Personal Jurisdiction Under § 6-103

Whether this Court may exercise personal jurisdiction over an individual who is neither domiciled in nor served with process in Maryland is a two-part analysis:  The Court "must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment."  *Tawney v. AC & R Insulation Co.*, No. WDQ-13-1194, at *2 (D. Md. Oct. 30, 2013) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).  The Maryland long-arm statue is "coextensive with the scope of jurisdiction allowable by due process."  *Id.* (citing *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 486 (Md. 2006)).  Nonetheless, "'the Court must address both elements in the personal jurisdiction analysis.'"  *Id.* (quoting *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 698 (D. Md. 2012)).

For this Court to exercise personal jurisdiction under Maryland's long-arm statute, Midtown "must identify a Maryland statutory provision authorizing jurisdiction."  *Id.* (citing *Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698).  Midtown cites Cts. & Jud. Proc. § 6-103(b)(3), which provides that "[a] court may exercise personal jurisdiction over a person, who directly or by an agent . . . [c]auses tortious injury in the State by an act or omission in the State."  Notably,

Cts. & Jud. Proc. § 6-103(b)(3) "impose[s] restrictions on the assertion of jurisdiction greater than those imposed by the Due Process Clause," such that a plaintiff's "failure to satisfy the test for specific jurisdiction under the Due Process Clause would doom [the plaintiff's] efforts to satisfy § 6–103(b)(3)." *Fyfe Co., LLC v. Structural Grp., LLC*, 2013 WL 2370497, at *3 n.6 (D. Md. May 30, 2013). Therefore, I first will address the due process requirements, for which I will consider "'(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Tawney*, 2013 WL 5887625, at *2 (quoting *Carefirst of Md., Inc.*, 334 F.3d at 397) (footnotes omitted).

Midtown's Complaint includes claims for "Breach of Contract - Misappropriation of Confidential Information" and "Misappropriation of Trade Secrets Under DC Code §§ 36-401 et seq." Compl. 4 & 6. Under the laws of the District of Columbia,[6] "'[t]o prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)). And, for purposes of a claim for misappropriation, "'misappropriation' means . . . [a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." D.C. Code § 36-401(2)(A). Midtown claims that the Noncompetition Agreement provided that Ms. Davé would not "retain company information or materials for personal use '[i]n the event of separation of employment,'" Compl. ¶ 21, and that Ms. Davé "breached the

---

[6] The Noncompetition Agreement provides that it "shall be governed by and construed in accordance with the laws of the District of Columbia." Noncomp. Agr. 3.

aforesaid obligation[] by sending at a minimum a pair of client lists . . . from her office email account to her personal email account," *id.* ¶ 23. Plaintiff argues that "Defendant sent the Lists and the information therein to her personal email address at a time when she was residing in Maryland," such that she received the Lists in Maryland and her "misappropriation of said lists was complete [] in Maryland." Pl.'s Opp'n 18. Thus, the "activities" at issue are Ms. Davé's sending and receiving of the Lists via email.

As for the first factor, "the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state," *see Carefirst of Md., Inc.*, 334 F.3d at 397, one of Plaintiff's activities—sending the emails—occurred in the District of Columbia, not in Maryland. The second activity—receiving the emails—has no identified location, and Plaintiff certainly has not identified any evidence that Ms. Davé received the emails *in Maryland*. Plaintiff has established only that Ms. Davé worked in the District of Columbia, lived in Maryland, and, while in the District of Columbia, sent an email to herself from her work email account. *See* Compl. 1, 2, 14. These facts do not show that Defendant intentionally received the Lists via email in Maryland. *See Carefirst of Md., Inc.*, 334 F.3d at 397; *Tawney*, 2013 WL 5887625, at *2. Moreover, even if Defendant received the Lists in Maryland, she received them through one email, such that the "extent" of purposeful availment would be minimal. *Cf. Fyfe Co.*, 2013 WL 2370497, at *4 ("electronic and telephone communications lasting a mere two months" did not "support the conclusion that the individual defendants purposely availed themselves of the privilege of doing business in Maryland to an extent sufficient to justify personal jurisdiction"). Likewise, with regard to the second factor, "whether the plaintiff['s] claims arise out of those activities directed at the state," while Midtown's claims against Ms. Davé certainly "arise out of" her acts of emailing and receiving the Lists, Plaintiff has not

demonstrated that Ms. Davé "directed" either act at Maryland.  *See Carefirst of Md., Inc.*, 334 F.3d at 397; *Tawney*, 2013 WL 5887625, at *2.  Indeed, even if Ms. Davé received the Lists in Maryland, the act was "directed" at Plaintiff, not Defendant, and Plaintiff is located in the District of Columbia.  Thus, these factors suggest that it would not comport with due process to exercise personal jurisdiction over Ms. Davé.[7]  *See Carefirst of Md., Inc.*, 334 F.3d at 397; *Tawney*, 2013 WL 5887625, at *2.

Further, as for the third factor, it would not be "constitutionally reasonable" for this Court to exercise jurisdiction.  *See Carefirst of Md., Inc.*, 334 F.3d at 397; *Tawney*, 2013 WL 5887625, at *2.  The Court considers five factors "to determine whether the exercise of personal jurisdiction would be constitutionally reasonable and not 'offend traditional notions of fair play and substantial justice.'"  *Dynacorp Ltd. v. Aramtel Ltd*., 56 A.3d 631, 678 (Md. Ct. Spec. App. 2012) (quoting *Himes Assocs., Ltd. v. Anderson*, 943 A.2d 30 (Md. Ct. Spec. App. 2008).  The factors are:

> "the burden on the defendant; the interests of the forum State; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and the shared interest of the several states in furthering fundamental substantive social policies."

*Id.* (quoting *Himes*, 943 A.2d at 46 (quoting *Camelback Ski Corp. v. Behning*, 539 A.2d 1107, 1112 (1988) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 107 (1987)))).

Here, appearing in Maryland does not impose a burden on Ms. Davé, who views the neighboring jurisdiction of the District of Columbia, only 13.3 miles away,[8] as "an appropriate venue."  Def.'s Mem. 10.  *See Hanson & Morgan Livestock, Inc. v. B4 Cattle Co.*, No. 05-07-cv-

---

[7] Although Defendant also lived in Maryland, such that it could be said that she "personally availed [her]self of the privilege of" living in Maryland, her claims do not "arise out of" this activity.  *See Tawney*, 2013 WL 5887625, at *2.

[8] I take judicial notice of the courts' locations pursuant to Fed. R. Evid. 201.

330, 2008 WL 4066251, at *6 (S.D. W. Va. Aug. 27, 2008) (finding that there was "no inherent unfair burden placed upon [the defendant] by litigating this case in West Virginia" because the defendant was "a resident of Tennessee, which is only a few hours from West Virginia," and he "alternatively requested that this case be transferred to the Western District of Virginia," a location that would not impose any less of a burden). Yet, Plaintiff is able to obtain the same relief in the District of Columbia. Moreover, while Maryland has little interest in the resolution of claims against a former resident who lived in Maryland for a relatively brief period, Plaintiff is a D.C. company and the claims at issue arise under D.C. law, such that the District of Columbia would have an interest in their adjudication. *See Hanson & Morgan Livestock*, 2008 WL 4066251, at *6 ("West Virginia has an interest in adjudicating this dispute because Plaintiff is a West Virginia corporation that seeks relief under West Virginia law for cattle sold in West Virginia."). Also, "the interstate judicial system's interest in obtaining the most efficient resolution of controversy" strongly favors dismissal of Plaintiff's claims in this Court, which should be brought as counterclaims in the lawsuit that Ms. Davé filed in the District of Columbia so that all related claims in the controversy could be resolved together, ensuring efficiency and consistency. *See Dynacorp.*, 56 A.3d at 678. Therefore, weighing these factors, it would not comport with due process for this Court to exercise jurisdiction over Plaintiff's claims. *See Carefirst of Md., Inc.*, 334 F.3d at 397; *Tawney*, 2013 WL 5887625, at *2. Consequently, Plaintiff cannot make a prima facie showing of personal jurisdiction under Cts. & Jud. Proc. § 6-103. *See Fyfe Co.*, 2013 WL 2370497, at *3 n.6.

## IV.    TRANSFER TO ANOTHER DISTRICT COURT

Although this Court cannot exercise jurisdiction over Defendant, it has the discretion to "transfer [the case] to another district court pursuant to 28 U.S.C. § 1406(a) . . . . if doing so is in

the interests of justice." *Robbins v. Yutopian Enters.*, 202 F. Supp. 2d 426, 430 (D. Md. 2002); *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."). Section 1406(a) permits the transfer of a case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Notably, while this Court's exercise of personal jurisdiction over Ms. Davé would not comport with due process, Ms. Davé would be subject to the jurisdiction of the United States District Court for the District of Columbia, which she concedes is "an appropriate venue." Def.'s Mem. 10; *see id.* at 7 ("[V]enue is proper [in the District of Columbia] because the facts and circumstances underlying this dispute are centered in the District of Columbia."). Thus, § 1406(a) allows for a transfer to that court. *See* 28 U.S.C. § 1406(a). Moreover, it would be imprudent to litigate the case when related claims, filed before this lawsuit, are pending in another jurisdiction. *See* Def.'s Mem. 6 ("This action should have been brought as a counterclaim to Ms. Davé's previously-filed lawsuit between the parties in the District of Columbia (the state in which the facts and circumstances of this dispute are centered) that arose from the same factual circumstances."); Pl.'s Opp'n 19 (noting that this action and the action in the District of Columbia are "substantially similar"). Therefore, I will transfer this case to the United States District Court for the District of Columbia. *See id.*

## V.    CONCLUSION

In sum, Plaintiff has failed to make a prima facie showing of personal jurisdiction in this Court, pursuant to Cts. & Jud. Proc. § 6-102 or 6-103. Yet, because this action should have been brought in the District of Columbia, the case IS TRANSFERRED to the United States District

Court for the District of Columbia for possible consolidation with the related case currently pending in that court, Case No. 1:13-cv-1866-RCL.  Defendant's Motion to Dismiss or, in the Alternative, to Stay IS DENIED AS MOOT.  A separate order shall issue.


Dated: <u>July 22, 2014</u>                        <u>            /S/            </u>
                                                            Paul W. Grimm
                                                            United States District Judge

lyb